NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| OBEDIAH M., <br><br> Petitioner, <br><br> v. <br><br> CHARLES L. GREEN, <br><br> Respondent. | Civil Action No. 17-7658 (CCC) <br><br> **MEMORANDUM OPINION** |

**CECCHI, District Judge.**

This matter has come before the Court on a Petition for Writ of Habeas Corpus (the "Petition") pursuant to 28 U.S.C. § 2241 filed by Petitioner Obediah M. ("Petitioner"). Petitioner is challenging his detention by immigration officials during his removal proceedings. Also before the Court are Respondent's Answer, (ECF No. 6), Petitioner's Reply, (ECF No. 7), and the parties' supplemental briefs addressing *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), submitted as ordered by the Court (ECF Nos. 9, 10). For the reasons stated below, the Petition is granted.

Petitioner is a citizen of Liberia who entered the United States in 1997, at the age of eight, as a lawful permanent resident. Unfortunately, Petitioner has not taken advantage of his opportunities here, and has led a life of crime. As a result, in 2010 the government initiated removal proceedings against him and he was ordered removed by an immigration judge. Removal did not occur, however, and Petitioner was released on an order of supervision. While on supervision, Petitioner continued to commit crimes. He was re-detained in 2012, but released again on supervision in 2013. Petitioner then committed yet another crime, and was again taken into custody on March 12, 2017. He filed a motion to reopen his immigration matter and a motion

for a stay of removal, which were both granted by the immigration court in August 2017. Following subsequent proceedings, Petitioner was ordered removed by the immigration court in 2018. Petitioner then filed a motion to stay his removal with the Third Circuit. On February 15, 2019, the Third Circuit granted Petitioner's motion for a stay of removal. *See* ECF No. 13-2.

Because Petitioner's removal has been stayed, Petitioner is in pre-removal-order detention. *See Leslie v. Att'y Gen. of U.S.*, 678 F.3d 265, 270 (3d Cir. 2012). The parties agree that Petitioner's detention is pursuant to 8 U.S.C. § 1226(c), which requires mandatory detention of aliens convicted of enumerated crimes during their removal proceedings. Until recently, the constitutionality of a section 1226(c) detention in this Circuit was governed by a pair of decisions, one from the Supreme Court and one from the Third Circuit. In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court was confronted with the question of whether indefinite mandatory detention under section 1226(c) was authorized by the Constitution. The Supreme Court held that such mandatory detention was permitted by the Constitution, but only for the period necessary to complete the removal proceedings. *See id.* at 531. Under the guidance of *Demore*, the Third Circuit held in *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469 (3d Cir. 2015), that indefinite detention under section 1226(c) without justification is unconstitutional, and "beginning sometime after the six-month timeframe . . . and certainly by the time [a petitioner] had been detained for one year," the government must proffer affirmative justification for the continued detention of a section 1226(c) detainee. *Id.* at 478. In so holding, the Third Circuit relied on one of its earlier cases interpreting § 1226(c), which found that under the constitutional avoidance doctrine, the statute cannot be construed as authorizing prolonged detentions without due process, and that "the statute implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to

fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community." *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 231 (3d Cir. 2011).

In *Jennings*, the Supreme Court struck down this reading of the statute under the constitutional avoidance doctrine. It held that while courts must construe a statute to avoid violations of the Constitution, any construction must still be supported by the language of the statute itself. "The canon of constitutional avoidance 'comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction.' In the absence of more than one plausible construction, the canon simply 'has no application.'" *Jennings*, 138 S. Ct. at 842 (citations omitted). As section 1226(c) contains no language regarding the reasonableness of detention, nor any discussion of the due process that must be afforded a detainee, *Jennings* found certain constructions of the statute, such as the one made by the Third Circuit in *Diop* and *Chavez-Alvarez*, to be unsupported by statutory language and therefore invalid. *See id.* at 847-48. *Jennings*, however, expressly stated that it did not address the constitutionality of detentions under section 1226(c). *See id.* at 851.

That question is squarely before the Court here. Relying on *Demore*, the Third Circuit has already held that section 1226(c) is constitutional on its face. *See Chavez-Alvarez*, 783 F.3d at 473 ("The Supreme Court left no doubt that the Government's authority under section 1226(c) to detain aliens without an opportunity for bond complies with the Constitution." (citing *Demore*, 538 U.S. at 531)). Therefore, the only challenge to the constitutionality of his detention under section 1226(c) available to Petitioner is an as-applied challenge under the facts of this case. To determine whether Petitioner's continued detention under section 1226(c) is in violation of the Constitution, the Court begins its analysis with an uncontroversial tenet: restraints on individual liberty by the

government without due process, even against aliens, violate the Constitution. *See Demore*, 538 U.S. at 523. In holding section 1226(c) to be facially constitutional, *Demore* relied on the fact that the statute only authorizes definite detention until the end of the alien's removal proceedings, on the presumption that aliens with certain criminal pasts are either a danger to the community and/or a flight risk. *See id.* at 528.

A statute cannot override the Constitution, however, and at some point an alien's detention becomes too long and the presumption of danger or flight too tenuous such that his or her detention without due process does not survive a constitutional challenge. *See id.* at 532-33 (Kennedy, J. concurring). "At a certain point, continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community." *Diop*, 656 F.3d at 232. "[T]he constitutionality of this practice is a function of the length of the detention." *Id.* Although as stated above, *Chavez-Alvarez* provided a framework regarding the length of detention, that framework was based on the doctrine of constitutional avoidance, one that *Jennings* struck down. As such, it is of limited utility in deciding whether a detention of a particular length is per se unconstitutional. Nevertheless, since *Demore* holds that Congress is permitted to make a reasonable presumption of danger/flight in detaining an alien, the six-month minimum threshold espoused in *Chavez-Alvarez*, a length held constitutional in *Demore* provides helpful guidance with respect to what time frame is likely to be considered constitutional.

Here, the parties disagree as to when Petitioner's section 1226(c) detention began, and therefore the length of his detention. Although the Third Circuit did not decide the issue of how the constitutionality of an immigration detention should be analyzed when it transitions from post-

removal-order detention back to pre-removal-order detention during the *Diop/Chavez-Alvarez* era, the *Leslie* decision is instructive in that regard. After finding that a petitioner's detention reverted back to pre-removal-order detention after a stay of removal was granted, *Leslie* went on to analyze the constitutionality of the petitioner's detention using the *total* time in custody: initial pre-removal-order detention, subsequent post-removal-order detention, and the reversion back to pre-removal-order detention. *See* 678 F.3d at 270. This approach makes sense, as the same constitutional principles govern a petitioner's detention regardless of whether the statutory authority to detain a petitioner changes. Accordingly, the Court rejects the argument that the constitutional clock resets after every shift in statutory authority, as such an argument would lead to the avoidance of an important constitutional question.

Here, Petitioner's detention was prolonged because he sought, and succeeded, in obtaining relief in the immigration court and has been granted a stay by the Third Circuit. "To conclude that [Petitioner's] voluntary pursuit of such challenges renders the corresponding increase in time of detention reasonable, would effectively punish [Petitioner] for pursuing applicable legal remedies." *Id.* at 271 (citations and internal quotation marks omitted). If the reasonableness of immigration detention is a function of length, then it makes little sense to break up the detention into chunks and decide individually whether each chunk is constitutional. This is especially true because section 1226(c) detentions, unlike post-removal-order detentions, do not exist for the purposes of affording the government sufficient time to affirmatively act. Rather, the reasonableness of immigration detention under section 1226(c) depends on whether a detention becomes unreasonably long as to overcome the presumption of danger/flight. As such, for the purposes of determining whether Petitioner's detention is constitutional, the Court conducts its analysis based on the total length of Petitioner's detention, which started on March 12, 2017.

Although the holding of *Chavez-Alvarez* has been abrogated by *Jennings*, its reasoning still provides helpful context for the Court in deciding whether Petitioner's detention is unconstitutional. The language of *Chavez-Alvarez* appears to suggest that there is a presumption of unconstitutionality at the one-year mark. *See* 783 F.3d at 478. The language also appears to allow for longer detention if the government can provide an affirmative justification for continued detention, *see id*, and a bad-faith defense to prolonged detention if a petitioner's conduct during his immigration proceedings constitutes an intentional delay to stall deportation. *See id.* at 476. Thus, while its holding is no longer binding, this Court finds that the framework *Chavez-Alvarez* created, that is, the flexible, facts-based balancing approach to determine if prolonged detention has become unreasonable, is still relevant to the constitutional analysis at issue. In fact, the Supreme Court itself has adopted this approach in addressing a different constitutional question dealing with speedy trials. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972) ("A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis."). Accordingly, the Court adopts the *Chavez-Alvarez* framework for the specific purpose of deciding whether Petitioner's continued detention is constitutional.

The government's only justification for continued detention appears to be that the prolonged duration of the immigration proceedings was caused by Petitioner's requests for continuances. However, that justification does not speak to whether those continuances were sought in bad faith. Indeed, as the immigration court granted at least some of his requests for relief, it would appear that Petitioner has raised meritorious arguments in his immigration matter, weighing against a finding of bad faith. Moreover, as this Court has previously held:

> [T]he only facts presented by Respondent are that Petitioner has requested, and was granted, numerous continuances, without explaining why any of those continuances were requested in bad faith, or whether the issues raised by Petitioner were meritless. Therefore, Respondent has only established that Petitioner took some

6

> time to litigate what may very well have been—and in fact, as it turns out, was found to be—a meritorious claim.
>
> . . . .
>
> If Respondent takes issue with the continuances, it is a docket management issue that can be more properly addressed by the immigration court. This Court will not question the immigration court's discretion on how to manage its cases, and this Court certainly will not punish Petitioner after the immigration judge determined that continuances were proper. Absent a showing of bad faith, dilatory tactics, or that continued detention is *necessary*, the Court cannot allow Respondent to continue its detention of Petitioner for, as stated above, what is supposed to be a non-punitive purpose.

*Rosa-Roque v. Green*, No. 16-4395 (CCC), 2017 WL 1528690, at *3-4 (D.N.J. Apr. 25, 2017) (emphasis in original). As the Third Circuit has also opined:

> The primary point of reference for justifying the alien's confinement must be whether the civil detention is necessary to achieve the statute's goals: ensuring participation in the removal process, and protecting the community from the danger that he or she poses. Therefore, it is possible that a detention may be unreasonable even though the Government has handled the removal case in a reasonable way.

*Chavez-Alvarez*, 783 F.3d at 475. "[I]ndividual actions by various actors in the immigration system, each of which takes only a reasonable amount of time to accomplish, can nevertheless result in the detention of a removable alien for an unreasonable, and ultimately unconstitutional, period of time." *Diop*, 656 F.3d at 223.

Because the government has neither provided sufficient affirmative justification for continued detention nor demonstrated a showing of bad faith, the Court finds that Petitioner's detention, at this point exceeding twenty-seven months, is unconstitutional. *See Jahmai J. v. Green*, 18-13740, 2019 WL 480515, at *3 (D.N.J. Feb. 6, 2019), *Carlos A. v. Green*, No. 18-13356, 2019 WL 325543, at *4 (D.N.J. Jan. 25, 2019) *Arturo E. v. Green*, No. 18-9283, 2018 WL 5342720, at *2 (D.N.J. Oct. 29, 2018); *Thompson v. Edwards*, No. 18-1006, 2018 WL 4442225 (D.N.J. Sept. 17, 2018); *Thomas C.A. v. Green*, No. 18-1004, 2018 WL 4110941 (D.N.J. Aug. 29, 2018); *K.A. v. Green*, No. 18-3436, 2018 WL 3742631 (D.N.J. Aug. 7, 2018) (post-*Jennings*

decisions granting bond hearings for section 1226(c) immigration detainees who had been detained for a period of time ranging from eighteen months to twenty-six months).

The remaining question is what constitutes the proper remedy. Under the current statutory scheme, the government need not simply release an alien once it reaches the limits of its constitutional authority to detain under section 1226(c). The Attorney General retains discretion to detain *any* alien "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Under section 1226(a), a detainee may seek a bond hearing with the immigration court to determine whether his continued detention is still necessary, *see Nepomuceno v. Holder*, No. 11-6825, 2012 WL 715266, at *1 (D.N.J. Mar. 5, 2012), or the government may automatically afford the detainee bond without a bond hearing. *See Reno v. Flores*, 507 U.S. 292, 308 (1993).

Courts in this district have found that providing a petitioner with a bond hearing similar to that afforded by section 1226(a) is a proper remedy upon a finding that a petitioner's section 1226(c) detention is unconstitutional. *See Thomas C. A. v. Green*, No. 18-1004, 2018 WL 4110941, at *6 (D.N.J. Aug. 29, 2018) ("An immigration judge shall therefore be required to provide Petitioner with a bond hearing within twenty-one (21) days, at which the Government bears the burden of showing that Petitioner is either a danger to the community or a flight risk."); *K.A. v. Green*, No. 18-3436, 2018 WL 3742631, at *4 (D.N.J. Aug. 7, 2018) ("[T]his Court will therefore grant Petitioner's habeas petition and order that an immigration judge provide Petitioner with a bond hearing within ten days. At that hearing, 'the Government [will be required] to produce individualized evidence that [Petitioner's] continued detention was or is necessary' to further the goals of § 1226(c).") (citing *Chavez-Alvarez*, 783 F.3d at 477-78.). The Court finds this remedy – a bond hearing at which the Government bears the burden of showing Petitioner is

either a danger to the community or a flight risk – appropriate in this matter. By holding that section 1226(c) detentions can become unconstitutional, the Court does not frustrate the congressional intent to detain dangerous or absconding aliens; instead it merely replaces a presumption of danger/flight with procedural due process to determine whether the presumption comports with the facts. An alien who is actually dangerous and/or a flight risk would stay detained, and the constitutional rights of *every* detainee would be protected. Accordingly, the Petition is granted, and the government shall take Petitioner before an immigration judge within twenty-one (21) days of this Memorandum Opinion for an individualized bond hearing, or release Petitioner.

**Date**: July 16, 2019

Claire C. Cecchi, U.S.D.J.